UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:24-cr-00159-KAD |
| ALYSON CRANICK | : | JANUARY 30, 2026 |

**DEFENDANT ALYSON CRANICK'S SENTENCING MEMORANDUM**

Alyson Cranick, through the undersigned counsel, hereby respectfully requests that the Court sentence her to the mandatory minimum of ten years' imprisonment.

\*

Given the chasmal irregularity that the offense conduct is from Ms. Cranick's life before and after the Summer of 2022, the undersigned sought a psychological evaluation of her, to shine some light on the mystery of what went wrong. The resulting report is attached as Exhibit A.

The evaluation rules out several important conclusions about Ms. Cranick:

She is not a pedophile (despite the offense conduct). *Id* at 8.

She is not a sexual predator. *Id*.

She is not a psychopath. *Id* at 5.

She does not have Antisocial Personality Disorder. *Id*.

The evaluation and the Presentence Report, along with our own observations, reveal these undeniably positive characteristics of Ms. Cranick:

She is a loving mother.

She is a loving wife.

She is a loving daughter.

She is a gentle and reserved and loyal family woman who retains the reciprocal love and loyalty of her family (despite the offense conduct).

All of these negatives and positives support the conclusion that Ms. Cranick is at a low risk of reoffending. *Id*. Given the absolute aberrance of the offense conduct, and the Court's ability to craft a combination of conditions of release that can last for as long as the Court sees fit, to provide for specific and general deterrence, ten years of imprisonment is more than enough to ensure just punishment.

*

Ms. Cranick is forty-four years old and has no criminal history. Despite this, her guidelines range is **life**. PSR ¶ 112. That is grossly disproportionate to guidelines ranges for first offenders who commit other most serious crimes in our law. For example, one who commits a Hobbs Act robbery in which he discharges a firearm and causes permanent or life-threatening injury, and who denies responsibility and is convicted at trial, faces a guidelines range of 135 to 168 months (11.25 to 14 years).[1] One who commits a RICO **murder** and accepts responsibility faces a guidelines range of 292 to 365 months (24.3 to 30.4 years.)[2]

---

[1] USSG § 2B3.1
[2] USSG § 2A1.1f

We acknowledge that Ms. Cranick's crime of conviction is incredibly serious. The trauma suffered by the victim is insidious and multifaceted. Though less serious than losing one's life, its seriousness is difficult to compare to, for example, the more blatant trauma of surviving a violent robbery.

Some cases that *are* more comparable to the record here, and which are attended by much lower guidelines ranges, are as follows.

·*United States v. Khedkar*, No. 24-14203, 2025 U.S. App. LEXIS 32700 (11th Cir. Dec. 15, 2025).

> In November 2023, an undercover agent posted on a Kik public group, posing as the father of an **eleven-year-old** girl. A user named "drbrownee," who turned out to be Khedkar, responded to the agent, and they began conversing through private messages on Kik, and then through text messages by phone.
> During this conversation, Khedkar asked the purported father for pictures and details about his daughter, including her sexual history, whether he had engaged in sex acts with her, and how much he charged. Khedkar also made plans to meet the father and girl the following day. Khedkar asked the father if he could kiss the girl and whether she liked chocolate, and he agreed to bring Reese's cups for her. The next day, after arriving at the agreed-upon retail store, he exited his car and began approaching the entrance, where he was met by FBI agents.
> After Khedkar's arrest, agents found an unopened package of Reese's cups in his car. In addition, a search of his cell phone revealed at least 25 conversations on Kik discussing the sexual exploitation of children, and evidence that he was the administrator of Kik groups with titles suggesting that they catered to users interested in sexual activity with children.
> *Id,* 2 – 3 (emphasis added).

Mr. Khedkar pleaded guilty without a plea agreement. His guidelines range was 168 to 210 months. He received a sentence of 150 months. *Id*.

Ms. Cranick's scienter is milder than Mr. Khedkar's. Here, some insights from our evaluation are relevant:

> [T]he evidence indicates that Alyson's attachment vulnerability led to her developing a regressive and pathologically anxious attachment to

3

> the victim. Throughout the time of the abuse her actions reflected anxious – one might say desperate – attachment behavior on her part. As noted in the PSR, towards the end of summer 2022, when the young man began efforts to distance himself from her, 'Ms. Cranick attempted to reengage with Minor Victim – at times crying to him …' The nature of her emotions and behaviors – adolescent in quality – are not those seen commonly in adults who sexually abuse children. Alyson's actions likely resulted from her regressive attachment vulnerability which, in the context of a "perfect storm" of factors (i.e., father's illness, situational/work stress, daughter's relationship with Victim) caused a marked breakdown in her judgment and behavior.
>
> Exhibit A at *9.

There is no evidence that Ms. Cranick specifically targeted eleven-year-old children either in person or online. Thus, her predisposition to do harm was less than a man who did target children—a man who demonstrated more readily identifiable proclivities towards this type of sexual aberration—and who received 150 months.

· *United States v. Hammond*, 698 F.3d 679 (8th Cir. 2012). Mr. Hammond pled guilty "to one count of enticement of a minor for the purpose of engaging in prohibited sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of enticement of a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) and (e)." *Id*, 680. His victim "was **eleven years old** for much of the material time period in this case." *Id*, 680. Mr. Hammond received two concurrent sentences of 240 months. *Id*.

Here we find someone whose conduct was indicative of pedophilia. Not only did he seek out an eleven-year-old victim, he made pornography of their encounters, ostensibly for other adult pedophiles to view.  By contrast, with Ms. Cranick, the evidence indicates "that, as observed by lifeguards at the lake, she was acting like a 'schoolgirl' and that her sexual behavior with the victim did reflect an immature and

regressed mental state. It is likely that she was unconsciously acting out unfulfilled psychological needs and desires rooted in an adolescent mindset." Exhibit A at *8.

Thus—from her perspective—her behavior was less a campaign to bring a child into her adult world than an effort to situate herself within his world. We are asking the court to make a subtle distinction, for the purpose of divining degrees of guilt. She is less culpable than Mr. Hammond.

· *United States v. Leroy*, No. 16-0243, 2017 U.S. Dist. LEXIS 102745 (W.D. Pa. July 3, 2017). The defendant "was charged in a four-count Indictment with two counts of travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. §§ 2423(b) and (e), and two counts of transportation with intent to engage in criminal sexual activity in violation of 18 U.S.C. §§ 2423(a) and (e) relating to two Minors (Minors A and B)." *Id* at *1. Minor A was thirteen to fourteen years old and Minor B was **ten years old**. *Id*, 3. The defendant was convicted after a jury trial. In its sentencing memorandum, the Government noted "his pattern of criminal sexual offending against four boys." *United States v. Leroy*, CASE #: 2:16-cr-00243-AJS-1, Doc # 168 at *3. Nonetheless, the Government asserted that "[a]nalysis of the § 3553(a) factors supports a sentence in the sentencing range of 262-327, Offense level 39, which represents a downward variance from the advisory guideline range." His guidelines range was life. The Court sentenced him to 360 months.[3] *Id*, Doc # 192.

---

[3] The entire sentence was as follows: "AMENDED JUDGMENT as to JAMES MARK LEROY (1), Counts 1, 2, 3, and 4, The defendant is sentenced to a 360-month term of imprisonment at each of Counts 1 through 4 to be served concurrently, to be followed by a lifetime term of Supervised Release at Counts 1 through 4, to run concurrently. Defendant is ordered to pay a mandatory $400.00 special assessment, a fine in the amount of $125,000, JVTA Assessment in the amount of $20,000.00, and Restitution for a total amount of $25,000.00. Signed by Judge Arthur J. Schwab on 7/18/17. (lck) (Entered: 07/18/2017)." *Id*.

In this case the Government itself requested a sentence of 22 to 27 years. The differences between Mr. Leroy and Ms. Cranick are myriad. He went to trial; she pleaded guilty. He was indicted on four counts; she was indicted on one. One of his victims was ten years old; younger than the victim in this case. And there were others: He had a pattern of sexually assaulting multiple boys. Her pattern was of ordinary suburban motherhood, disrupted by this one terrible summer.

·In the New Mexico case of Jaime Sandoval-Gonzalez, the defendant was convicted at trial of "two counts of criminal sexual penetration of a minor under 13. In March of 2020, Sandoval-Gonzalez locked herself in a bathroom with an 11-year-old, gave her alcohol, tobacco and sexually abused her. Sandoval-Gonzalez was discovered with the victim when another adult broke down the door of the bathroom."[4] She was sentenced to 15 years (180 months).[5]

This is worse than Ms. Cranick's conduct because Ms. Sandoval-Gonzalez used force, and, in losing at trial, loses credit for acceptance of responsibility.

*

In her victim impact statement, the victim's mother recounts how the harm caused by Ms. Cranick's actions has extended to her entire family. This is completely understandable. Just so, the harm of justice being visited upon Ms. Cranick will extend to *her* entire family. Her children will also face shame. Her husband has had to—and will continue to have to—pick up the slack from his wife's removal from their lives. Ms. Cranick's parents, who are by all accounts supportive and loving, who did their best for

---

[4] Isaac Cruz, *Woman sentenced for raping 11-year-old in 2020*, KRQE News, 10/20/2025, available online at https://www.krqe.com/news/crime/woman-sentenced-for-raping-11-year-old-in-2020/ (last viewed 1/27/26).
[5] *Id.*

6

her, are statistically unlikely to survive their only daughter's incarceration. Justice is not a zero-sum equation here. It is an all-encompassing tragedy.

*

We propose that ten years is sufficient, because Ms. Cranick will be well into her fifties by the time she is released. Ten years in prison is a dreadfully long time. Ten years is enough to send a message to society; it is enough to punish her; it is enough to deter others who, like her, might be suffering from regression and obscenely bad judgment; it is far more than enough to deter Ms. Cranick herself. She has already been deterred by this process. As for rehabilitation, Ms. Cranick would be happy to abide by any conditions, and take any classes, and subject herself to any monitoring, if it means she can be a mother to her children (who will, by then, be grown) again. With respect to the protection of society, it is worth remembering that she says of herself (and we agree), "I don't have a strong personality." <u>Exhibit A</u> at *3. Upon her release, she will retire to a quiet and private life at home.

Alyson Cranick's behavior will always remain somewhat of a mystery, but this much is clear: She is not a pedophile, not a predator, not angry, not aggressive, not antisocial; she is a mother and a wife and a daughter, loved by her children and husband and parents. Adding prison time beyond ten years will only increase the sum of pain in this world, without adding any reciprocal relief.

Respectfully Submitted,<br>THE DEFENDANT,<br>Alyson Cranick<br><br>W. T Koch III

7

W. Theodore Koch, III  
Jessica M. Walker  
Fed. Bar # ct26854  
Koch, Garg, Walker & Smart, LLP  
169 Main Street, Suite 800-21  
Middletown, CT 06457  
Phone: 860-908-1542  
ted@kgwslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2026, a copy of the foregoing Notice of Appearance was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CV/ECF Filing System.

*/s/ W. T. Koch III*.
W. Theodore Koch, III
Fed. Bar # ct26854
Koch, Garg, Walker & Smart, LLP
169 Main Street, Suite 800-21
Middletown, CT 06457
Phone: 860-908-1542
ted@kgwslaw.com

8